IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RONNIE DEAN AUSTIN, )
)
    Plaintiff, )
)
) CIV-10-800-F
v. )
)
MICHAEL J. ASTRUE, )
 Commissioner of Social Security )
  Administration, )
)
    Defendant. )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Background

Plaintiff filed his applications for benefits on May 11, 2006. (TR 120-122, 125-128).

1

In his applications, Plaintiff alleged that he was disabled due to bipolar disorder, panic attacks, and anxiety disorder. (TR 138). He alleged he was unable to work because of these conditions beginning March 1, 2004, and that he was terminated from his last job at that time due to his mental impairments. (TR 138). Plaintiff described previous work as a landscape installer, oil rig air driller, and tile layer. (TR 139, 155). Plaintiff stated he had received mental health treatment for depression in 2001-2002 and that he completed the 11th grade. (TR 141-142). He described daily activities of caring for his son while his wife worked, watching sports on television, and attending weekly counseling sessions with his son. (TR 144-151). He described difficulties in completing tasks, concentrating, understanding, handling stress, and being in public. (TR 149-150). Plaintiff's wife also provided a detailed statement concerning Plaintiff's functional limitations and usual daily activities. (TR 176-183).

Plaintiff's applications were denied initially and on reconsideration. (TR 52-56). At Plaintiff's request, a hearing *de novo* was conducted on June 2, 2008, before Administrative Law Judge Moser ("ALJ"). (TR 24-51). At this hearing, Plaintiff testified he was 39 years old and had a 10th grade education. (TR 27-29). Because he received unemployment benefits for a period of time after he stopped working, Plaintiff amended his alleged disability onset date to September 30, 2004. (TR 27-29). He described severe anxiety, hallucinations, anger and irritability problems due to previous childhood trauma, arthritis in his knees and elbows, difficulty sleeping due to nightmares, flashbacks which caused panic attacks, migraine headaches, no grocery shopping or cooking activities, and no daily activities except watching

television with his son. (TR 32-45). Plaintiff stated he had a driver's license but did not drive and only left the house about once every two weeks. Plaintiff stated he took medications that relieved some of his symptoms but not all of them and that he was undergoing 15 to 20 minute counseling sessions once a month for the previous ten months. (TR 45-47). A vocational expert ("VE") testified at the hearing (TR 48-50) concerning the skill and exertional levels of Plaintiff's previous work. The VE also responded to hypothetical questioning concerning the availability of jobs for individuals with certain vocational characteristics as described by the ALJ.

The ALJ subsequently issued a decision on July 24, 2008, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the ability to perform his previous jobs as a landscape installer and kitchen helper. (TR 10-18). In a Notice of Appeals Council Action dated May 26, 2010, The Appeals Council declined Plaintiff's request to review this decision. (TR 1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196

F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399

4

F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Residual Functional Capacity Assessment

Following the required sequential evaluation procedure, the ALJ found at step four that Plaintiff's severe mental impairment had resulted in functional limitations, including moderate limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace. (TR 13). The ALJ further found that Plaintiff had experienced one or two episodes of decompensation in work or work-like settings. (TR 13). Despite his mental impairment and resulting functional limitations, the ALJ found Plaintiff could perform simple tasks under routine supervision, could interact with supervisors and co-workers on a superficial basis, and could adapt to work situations, but could not perform tasks involving detailed instructions, and could not interact with the general public. (TR 13-14). In making this residual functional capacity ("RFC") assessment, the ALJ noted that she concurred with the identical RFC assessments made by two state agency medical consultants. (TR 17).

In connection with the step four determination, the ALJ found that Plaintiff's allegation of disabling mental impairments was not entirely credible. In explanation of this credibility determination, the ALJ reasoned that Plaintiff had a "very limited history" of mental health treatment which began in May 2007, he had "basically been compliant with medications but has had some noncompliance with medication and did not show for one scheduled appointment," his mental health treatment records showed "improvement with medications as noted in progress notes," he had "sought only minimal psychiatric treatment,"

5

he had "improved significantly with medications since May 2007 and has had no side effects from medications," and he "described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (TR 17). The ALJ noted that Plaintiff cared for his own personal needs and the needs of his 7-year-old son, played with his son, performed light household duties, watched television, associated with a brother-in-law, "goes out on the porch a couple times a day," and "does not drive but does have a driver's license." (TR 17). Relying on the VE's testimony, the ALJ found that Plaintiff was capable of performing his previous jobs as a landscape installer and kitchen helper.

Plaintiff contends that the ALJ erred in assessing Plaintiff's mental RFC for work. Plaintiff first contends that the ALJ erred in relying on the findings and opinions of the state agency medical consultants in determining Plaintiff's RFC for work. Plaintiff points out that the state agency medical consultants' RFC assessments were made prior to the time that Plaintiff began treatment for his mental impairments in May 2007. The record contains evidence that Plaintiff initially sought mental health treatment in May 2007 for depression, anxiety, anger, and audio-visual hallucinations. (TR 316, 318). Plaintiff described long-term depression and anxiety, suicidal thoughts, homicidal thoughts, recurring nightmares of childhood molestation by his baseball coach and physical abuse by his father and brother, auditory hallucinations (hearing voices) beginning at about age 18, visual hallucinations (seeing shadow people) beginning at about age 18, and an inability to leave his home. (TR 301, 308, 317). He described panic attacks occurring three to four times per day. (TR 301).

He reported he had no friends other than his brother-in-law and that he did not trust other people and experienced social anxiety when he attempted to go to public places. (TR 310). He reported one previous suicide attempt in 1998. (TR 317). Plaintiff reported he cared for his son when his son was not attending school, and his wife performed all other functions in the home, which caused increased feelings of shame and increased isolation and depression. (TR 310).

Plaintiff's treating psychiatrist prescribed medications for Plaintiff beginning June 4, 2007, and the record shows Plaintiff returned for follow-up treatment by the psychiatrist in July 2007, August 2007, October 2007, February 2008, and March 2008. (TR 290-296). During this period of time, the treating psychiatrist adjusted Plaintiff's medications and noted Plaintiff exhibited objective signs of depressed and anxious mood in June 2007, October 2007, and March 2008. (TR 288, 292, 296).

Because the state agency consultants did not review these records prior to rendering their assessments of the severity of Plaintiff's mental impairments, the ALJ erred in relying on those assessments and in failing to explain why these consultants' assessments were ascribed greater weight than the assessments of Plaintiff's treating mental health professionals concerning his functional limitations. It would seem logical that the low GAF ratings set forth in Plaintiff's mental health treatment records[1] would affect the state agency

---

[1] A GAF of 41 to 50 indicates "[s]erious symptoms" or "serious impairment in social, occupational, or school functioning, such as inability to keep a job." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

reviewers' assessments of Plaintiff's RFC for work. However, the ALJ did not discuss the GAF ratings or their impact on the earlier RFC assessments provided by the state agency medical consultants.

As to Plaintiff's subjective complaints of disabling psychiatric impairments, Plaintiff contends that the ALJ erred in relying on Plaintiff's failure to seek treatment sooner for his mental impairments and his alleged medication noncompliance as reasons for discounting his credibility. "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse." Pates-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009)(internal quotation omitted)(collecting cases). See Zeitz v. Secretary of Health & Human Servs., 726 F.Supp. 343, 349 (D.Mass. 1989)(recognizing that "a psychosomatic anxiety-related disorder such as agoraphobia may defy any generally accepted prescribed treatment requiring the will of the individual claimant to recover"). In explaining her credibility decision, the ALJ pointed in her decision to only one notation in Plaintiff's mental health treatment records as evidence of his medication noncompliance. This treatment note, however, was made in conjunction with Plaintiff's first visit to his new treating psychiatrist, Dr. Bhupathiraju. (TR 296). The note indicates Plaintiff described prior noncompliance with medications, not that he was noncompliant with the medications prescribed by this physician during this first office visit. Succeeding office notes by the treating psychiatrist note that Plaintiff returned to the medication clinic for follow-up treatment through March 2008 and was compliant with the medications prescribed for his

diagnosed mental impairments of bipolar disorder and generalized anxiety disorder. (TR 288, 290, 291, 292, 293). Thus, the ALJ erred in relying on Plaintiff's medication noncompliance as reason for discounting Plaintiff's credibility.

The record shows Plaintiff has been diagnosed with panic disorder with agoraphobia, post-traumatic stress disorder, schizoaffective disorder, bipolar disorder, and generalized anxiety disorder. (TR 204, 290, 313). In his disability applications and in the records of consultative and treating examiners, Plaintiff persistently described a solitary life of isolation and very little contact with the world outside of his home coupled with frequent panic attacks and other psychological symptoms that caused him to retreat from public situations. Plaintiff's wife provided a consistent statement indicating that he rarely went out into public and experienced panic attacks when he attempted to do so.

Pursuant to Social Security Ruling 96-7p, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain the infrequent or irregular medical visits or failure to seek medical treatment." SSR 97-7p, 1996 WL 374186, at *7 (July 2, 1996). In the ALJ's decision the ALJ reasoned that Plaintiff's subjective complaints of disabling mental impairments were not credible because Plaintiff had not sought mental health treatment before May 2007 and that his record of mental health treatment showed his symptoms improved with medications. The ALJ pointed to two instances in the record, once in August 2007 and again in February 2008 in which Plaintiff's treating psychiatrist noted

9

no abnormal mental findings. (TR 291, 293). However, these same treatment records reflect that in October 2007, Plaintiff exhibited depressed and anxious mood. (TR 292). The psychiatrist increased the dosage of one of Plaintiff's medications and added a new medication to his treatment regimen. (TR 292). Again, in March 2008, the psychiatrist noted that Plaintiff exhibited a depressed and anxious mood, and the psychiatrist increased the dosage of one of Plaintiff's prescribed medications. (TR 288). This record hardly reflects that Plaintiff's mental impairments showed improvement over the course of Plaintiff's treatment. The ALJ did not question Plaintiff at the hearing concerning his reasons for not seeking mental health treatment before May 2007, and the ALJ's decision does not contain an adequate discussion of this significant issue.

As an additional reason for discounting Plaintiff's credibility, the ALJ stated that Plaintiff was able to care for his own personal needs and the needs of his 7-year-old son. However, Plaintiff testified at the hearing that he watched cartoons with his son. (TR 41). Plaintiff testified that his wife set out his clothing for him, told him when to shower, and performed the cooking and shopping chores, that he did not drive, and that his wife "basically [did] everything" for him. (TR 43-45). Plaintiff's wife provided a statement that was consistent with Plaintiff's testimony. (TR 176-183). The ALJ's decision does not reflect any consideration of this statement or any reasons for rejecting the detailed lay statement, which is consistent with Plaintiff's testimony regarding his minimal daily activities and the medical evidence of his severe mental impairments. Cf. Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996)(declining to adopt rule requiring ALJ to make specific written findings of each

witness's credibility so long as ALJ's decision reflects ALJ considered the testimony).

The ALJ relied on the opinions of the state agency consultants in determining Plaintiff's RFC for work. However, these consultants had not reviewed Plaintiff's mental health treatment records. Plaintiff's treating mental health professionals diagnosed Plaintiff with severe mental impairments and consistently assessed him with GAF ratings indicating an inability to sustain employment. The ALJ's errors in discounting the credibility of Plaintiff's allegations of disabling mental impairments and in assessing Plaintiff's RFC for work warrant a reversal of the Commissioner's decision and a remand for further administrative proceedings to correct these errors.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      June 13th , 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 24th day of May, 2011.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE